O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ADMIRAL INSURANCE COMPANY,               )   Case No. CV 13-05100 DDP (SSx)
                                         )
                    Plaintiff,           )   **ORDER RE CROSS SUMMARY JUDGMENT**
                                         )   **MOTIONS AS TO EXTENT OF COVERAGE**
          v.                             )   [Dkt. Nos. 30, 36]
                                         )
KAY AUTOMOTIVE DISTRIBUTORS,             )
INC., a California                       )
corporation; ~~ANNETTE~~                 )
~~KARDISH, a California~~                 )
~~resident; JONA KARDISH, a~~             )
~~California resident; JESSICA~~          )
~~KARDISH, a California~~                 )
~~resident~~; CHRISTOPHER                 )
INGRAM,a California resident             )
,                                        )
                                         )
                    Defendants.          )
_____         )


     Presently before the Court are cross motions for summary

judgment, filed by Plaintiff and by Defendant Christopher Ingram

("Ingram"), on the issue of the extent of coverage under an

insurance contract purchased by Defendant Kay Automotive

Distributors ("Kay").  Having heard oral arguments and considered

the parties' submissions, the Court adopts the following order.

///

## I.    BACKGROUND

Kay employed Ingram as a delivery-person from 2007 to 2011. (State Court First Amended Complaint[1] ("State FAC"), ¶ 4.)  Ingram alleges that Kay required workers to make deliveries off the clock, forced employees to accept paid time off in lieu of overtime pay, and required employees to skip meals and rest breaks.  (Id. at ¶¶ 16-18.)  He also alleges that he did not receive all the pay that was due to him at the end of his employment, including reimbursement for business expenses.  (Id. at ¶ 20.)

Kay purchased an "Employment Practices Liability Insurance" contract from Plaintiff with an effective policy period of September 6, 2010 to September 6, 2011.  (Decl. Barbara Mandell, Ex. A at 62.)  The policy covered wrongful acts by Kay against its employees, but it excluded certain claims

> based upon, arising out of, directly or indirectly resulting
> from or in consequence of, or in any way involving any
> federal, state, local or foreign wage and hour laws,
> including, without limitation, the Fair Labor Standards Act;
> provided, however, the Insurer will pay Costs of Defense up
> to, but in no event greater than $100,000, for any such
> Claims, without any liability by the Insurer to pay such sums
> that any Insured shall become legally obligated to pay as
> Damages . . . .

(Id. at 66-67.)

Plaintiff brings this action seeking declaratory judgment that the above exclusion relieves it of any duty to indemnify Kay for

---

[1]This refers to Ingram's *state court* complaint against Kay. (Dkt. No. 36-8, Decl. Brian Mankin, Ex. C.)

Ingram's claims and limits its liability for costs of defense to $100,000.  (Dkt. No. 1.)  The parties have brought these motions for summary judgment to settle the legal questions of contract interpretation involved.  (Dkt. Nos. 30, 36.)

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986).

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.  There is no

genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**III. DISCUSSION**

**A.   Contractual Terms**

The parties agree that the contract is governed by California law. (E.g., Ingram's Memo. P. & A. ISO Mot. Summ. J. at 2:4; Plaintiff's Memo. P. & A. ISO Mot. Summ. J. at 13:23.)  Under California law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit."  Cal. Civ. Code § 1638.  "The words of a contract are to be understood in their ordinary and popular sense . . . unless used by the parties in a technical sense, or unless a special meaning is given to them by usage . . . ."  Cal. Civ. Code § 1644. "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over. If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean."  S. Cal. Edison Co. v. Superior Court, 37 Cal. App. 4th 839, 847–48 (1995) (citations omitted).

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ."  Cal. Civ. Code § 1639.  However, the written contract may be ambiguous if "on its face, it is capable of two different reasonable interpretations."  United Teachers of Oakland v. Oakland

4

Unified Sch. Dist., 75 Cal. App. 3d 322, 330, 142 Cal. Rptr. 105, 110 (Ct. App. 1977).  Ambiguities in a form contract that cannot otherwise be resolved are resolved against the drafter.  Oceanside 84, Ltd. v. Fid. Fed. Bank, 56 Cal. App. 4th 1441, 1448 (1997).  In the case of insurance contracts, especially, "coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer."  MacKinnon v. Truck Ins. Exch., 31 Cal. 4th 635, 648 (2003) (internal quotation marks, brackets, and ellipses omitted).

## 1.   Meaning of "Wage and Hour Laws"

The parties dispute the meaning of the phrase "any federal, state, local or foreign wage and hour laws, including, without limitation, the Fair Labor Standards Act" in the contract.  Ingram argues that this phrase "could only have been intended to refer to wage and hour laws that are similar to the FLSA [Fair Labor Standards Act]."  (Ingram's Opp'n at 6:10-11.)  Ingram argues that if it were interpreted otherwise, the reference to the FLSA would be superfluous.  (Id. at 6:13-16.)  Additionally, Ingram points to the interpretive canon of "ejusdem generis," which requires that "where specific words follow general words in a contract, the general words are construed to embrace only things similar in nature to those enumerated by the specific words."  Pfeifer v. Countrywide Home Loans, Inc., 211 Cal. App. 4th 1250, 1275, (2012) (internal quotation marks omitted).

The first inquiry is whether the contract language is reasonably susceptible to Ingram's interpretation.  The Court finds that it is not.  There is little ambiguity in the phrase "any

federal, state, local or foreign wage and hour laws."[2]  It
describes four possible sources of law dealing with laborers' wages
and hours worked, and it excludes claims based on *any* such law.
That the sentence also specifies that those laws "includ[e],
without limitation, the Fair Labor Standards Act" does not
neutralize the word "any," nor does it change the meaning of the
phrase "wage and hour laws."  By way of analogy, if an insurance
contract excluded claims based on damages caused by "any natural
disaster, including hurricanes," it would be unreasonable to read
the exclusion as not encompassing earthquakes or volcanoes, just
because earthquakes and volcanoes are not composed of wind and
rain.

Ingram cites to <u>California Dairies Inc. v. RSUI Indem. Co.</u>,
which held that "it would not be reasonable to find that"
California statutory provisions regarding reimbursement of business
expenses "are 'similar'" to the FLSA, because the FLSA contains no
such provision.  617 F. Supp. 2d 1023, 1045 (E.D. Cal. 2009).  But
<u>California Dairies</u> only underscores the flaw in Ingram's
interpretation of the contract.  In that case, the contract
excluded claims "[f]or violation of any of the responsibilities,
obligations or duties imposed by . . . the Fair Labor Standards Act
. . . or any *similar provision* of federal, state or local statutory
law or common law . . . ."  <u>Id.</u> at 1029 (emphasis added).
<u>California Dairies</u> shows, then, that when parties want to limit the
exclusion to provisions of state law similar to FLSA, they can do

---

[2]There might be *some* ambiguity – as to whether the word "laws"
means only statutory schemes, or whether it encompasses the common
law as well – but that ambiguity, even if present, does not give
rise to the reading Ingram seeks.

so in plain language.[3]  Here, the contractual language is
different, and unambiguously so.

The Court finds that the contract's language regarding "wage
and hour laws" is not susceptible to Ingram's interpretation.
Rather, the phrase refers to, in relevant part, sections of the
California Labor Code dealing with the pay and hours of workers,
whether or not it is "similar" to FLSA.

**B.   Meaning of "Based Upon," "Arising Out Of," and Other
       Relational Language**

The interpretive inquiry is not at an end, however.  The
contract excludes not just claims directly authorized by wage and
hour laws themselves, but claims "based upon, arising out of,
directly or indirectly resulting from or in consequence of, or in
any way involving" such laws.  Plaintiff argues that "arising out
of," in particular, is "consistently given a broad interpretation .
. . in various insurance provisions," that it requires "only a
minimal causal connection or incidental relationship" to the thing
or things listed, and that it means "a claim need only be 'slightly
connected to one of the types of injury that is specifically
identified for exclusion.'" (Pl.'s Opp'n at 16 (quoting Acceptance
Ins. Co. v. Syufy Enterprises, 69 Cal. App. 4th 321, 328 (1999) and
Continental Cas. Co. v. City of Richmond, 763 F.2d 1076, 1081 (9th
Cir. 1985)).)

Ingram, on the other hand, argues that such a broad
interpretation would exclude far more claims than the parties could

---

[3]See also TriTech Software Sys. v. U.S. Specialty Ins. Co.,
No. CV10-00094-R VBKX, 2010 WL 5174371 (C.D. Cal. Dec. 13, 2010)
(coming to similar holdings as to a contract with the same "similar
provisions" language).

possibly have intended, including "a sexual harassment claim based
on a request for sexual favors in exchange for proper payment of
overtime wages" and "a claim by an employee who was wrongfully
terminated because he refused to work overtime unless he was paid
at an overtime rate." (Ingram's Reply at 8.)

The Court agrees with Ingram that such results cannot be the
intended effect of the exclusion. Rather, the exclusion must be
read in light of its presumed purpose. The purpose of wage and
hour exclusions, as the Seventh Circuit has noted,

> is to avoid moral hazard, which, in its most extreme form, is
> the temptation of an insured to precipitate the event insured
> against if the insurance goes beyond merely replacing a loss .
> . . . Insurance against a violation of an overtime law,
> whether federal or state, would enable the employer to refuse
> to pay overtime and then invoke coverage so that the cost of
> the overtime would come to rest on to the insurance company.
> The employer would have violated the overtime law with
> impunity, unjustly enriching itself by the difference between
> the overtime wage for the hours in question and the straight
> wage. No insurance company would knowingly write a policy that
> would enable the insured to trigger coverage any time it
> wanted a windfall.

Farmers Auto. Ins. Ass'n v. St. Paul Mercury Ins. Co., 482 F.3d
976, 978-79 (7th Cir. 2007).

With that purpose in mind, it would seem that a wage and hour
law exclusion of the kind at hand (absent very clear language to
the contrary) serves only to exclude wrongdoing where the wrongful
act has the effect of offloading labor costs to the insurer, and

only to the degree that the claim rests on or involves violations of the wage and hour statutory scheme.[4]  Other claims as to wrongdoing by the employer or its agents would not be excluded, even if they affected wages; to hold otherwise would render this type of insurance policy (for "employment practices liability") largely illusory.

**C.   Application to Ingram's Claims**

Ingram brings claims for the following: (1) misrepresentation; (2) failure to pay minimum, regular, and overtime wages; (3) failure to provide mandated meal periods; (4) failure to provide mandated rest periods; (5) failure to make payments within the required time; (6) failure to provide itemized wage statements; (7) failure to maintain adequate records as to wages and hours worked; (8) failure to reimburse business expenses; (9) violation of California's unfair competition statute; and (10) a claim under the Private Attorneys General Act ("PAGA"), alleging multiple violations of the California Labor Code.  (FAC generally.)

**1.   Violations of Labor Code Provisions Regarding Wages and Hours**

Claims (2)-(7) above are predicated directly on violations of sections of the California Labor Code dealing explicitly with wages and hours: to wit, §§ 204 & 1197 (minimum wage); §§ 510 & 1198 (maximum hours and overtime pay); §§ 226.7 & 512 (meal and rest periods); §§ 201, 202, 203 (timing of payment of wages); and §§ 226

---

[4]As to Acceptance and Continental, the cases cited by Plaintiff, the Court notes that both cases dealt with exclusions of claims "arising out of" certain factual situations.  There, the "minimal causal connection" is presumably similar to the idea of proximate cause.  It is not clear that how that sort of reasoning would apply to claims "arising out of" a statutory scheme.

& 1174 (record-keeping). These are all, without dispute, "wage and hour laws" under the exclusion provision.[5]

**2.   Violation of the Labor Code Provision Regarding Reimbursement of Business Expenses**

Claim (8) is predicated on Kay's alleged violations of Cal. Labor Code § 2802, which requires that "[a]n employer . . . indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ."

There are nontrivial arguments that § 2802 does not fall within the meaning of "wage and hour laws." The section's plain language does not directly touch on wages paid or hours worked. Moreover, it does not fall under Division 2 of the Labor Code, which contains the minimum wage, overtime, rest period, payment timing, and record-keeping provisions listed above. Rather it

---

[5]At oral argument, Ingram's counsel suggested that claims for violations of Cal. Labor Code §§ 226 & 1174, requiring accurate record-keeping and correct wage statements, might not be claims arising out of "wage and hour laws," because the record-keeping requirements serve purposes independent of enforcing the wage laws – for example, enabling employees to accurately pay taxes. But the fact that a section of the Labor Code serves more than one purpose does not mean that it is not part of the state's "wage and hour laws." Here, for example, although § 226 does facilitate payment of taxes, it also requires information not necessary for tax filing, such as "total hours worked," "the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis," and "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate." Cal. Labor Code § 226(a). And § 1174 requires that employers allow the state labor division access to the required records in order to "make any investigation that they are authorized by this chapter to ascertain or make." Cal. Lab. Code § 1174(b). The statute also states that "[a]n employer shall not prohibit an employee from maintaining a personal record of hours worked." <u>Id.</u> All of this suggests that these sections are part of California's comprehensive scheme of "wage and hour laws."

falls under Division 3, "Employment Relations," which governs more general obligations of employers and employees to each other.[6] Codification under Division 3 is not necessarily dispositive of whether a section deals with wages – for example, § 2928 deals with wage deductions for tardiness – but it might indicate that the section is somewhat isolated from the wage and hour statutory scheme.  Finally, to the degree that the wage and hour law exclusion is ambiguous as to § 2802, interpretive canons favor resolving the ambiguity against the insurer and in favor of coverage.

On the other hand, § 2802 is frequently paired with the Division 2 sections listed above in actions against employers who allegedly underpay their employees; often such actions are described as "wage and hour" actions by the courts, without distinguishing the business expense claim.[7]  And this makes sense. The function of § 2802 parallels the function of the minimum wage and other wage and hour laws – they all prevent employers from offloading expenses onto their employees, whether by wage theft or by failing to reimburse them for business costs.  And similarly, the logic of the wage and hour exclusion applies to § 2802 –

_____

[6]For example, § 2800.1 requires employers of musicians to take reasonable steps to protect their employees' musical instruments; § 2803.5 requires employers who offer health insurance to cover children; § 2858 requires employees to exercise a reasonable degree of skill in their work; and § 2870 limits employers' contractual rights to the inventions of their employees.

[7]See, e.g., <u>Ayala v. Antelope Valley Newspapers, Inc.</u>, 59 Cal. 4th 522 (2014); <u>Arellano v. Kellermeyer Bldg. Servs., LLC</u>, No. 13-CV-00533-BAS BGS, 2014 WL 7176463 (S.D. Cal. Dec. 5, 2014); <u>Villalpando v. Exel Direct Inc.</u>, No. 12-CV-04137-JCS, 2014 WL 6625011, at *19 (N.D. Cal. Nov. 20, 2014); <u>Brewer v. Gen. Nutrition Corp.</u>, No. 11-CV-3587 YGR, 2014 WL 5877695, at *2 (N.D. Cal. Nov. 12, 2014).

1   employers should not be able to obtain a windfall by forcing their

2   insurers to reimburse their employees for the employer's expenses.

3        The Court therefore finds that § 2802 is also a wage and hour

4   law and subject to the exclusion.

5   **3.   Misrepresentation Claim**

6        Ingram's first claim, for misrepresentation, is a common law

7   claim, and so it is not a wage and hour claim per se.  Moreover, as

8   discussed above in Part III.B, it is possible to frame a

9   misrepresentation claim that touches on *wages* but that is not

10  "based on" or "arising out of" or otherwise rooted in the wage and

11  hour *laws*.  If, for example, an employee alleged that her employee

12  promised her a $100,000 salary, and in reliance on that promise she

13  moved to her detriment, only to find that the actual salary was

14  $75,000, that would not be a claim "based on, arising out of,

15  directly or indirectly resulting from or in consequence of, or in

16  any way involving any federal, state, local or foreign wage and

17  hour laws," even though the claim involved wages.

18       Here, however, Ingram's FAC alleges only that Kay made false

19  statements "regarding the law pertaining to wages and working

20  conditions and/or its compliance with the law."[8]  (FAC, ¶ 32.)  The

21  FAC specifically states that Ingram and other employees relied on

22  false "wage and hour representations."  (Id. at ¶ 36.)  The damages

23

24       [8]At oral argument, Ingram's counsel argued that the phrase
    "and working conditions" saved the allegations from being purely
25  rooted in the wage and hour laws.  Presumably one could make an
    allegation of misrepresentation as to workplace conditions having
26  nothing to do with wage and hour laws – a representation that the
    employer has taken all necessary safety precautions, for example.
27  In light of surrounding language, however, the Court cannot find in
    this vague, isolated phrase an actual claim for misrepresentation
28  regarding something other than wage and hour requirements.

1  Ingram seeks are not damages resulting from some independent

2  falsehood and reliance, but merely damages for "earned but unpaid

3  minimum, regular, overtime and premium wages." (Id. at ¶ 37.)

4      This misrepresentation claim arises directly out of the wage

5  and hour laws and is subject to the exclusion.

6  **4.   Unfair Competition Law Violations**

7      Claim (9), for violations of California's Unfair Competition

8  Law ("UCL"), is also not a wage and hour claim per se.  The UCL is

9  a law barring unfair business practices, usually in the context of

10  gaining an unfair edge against competitors.  Cal. Bus. & Prof. Code

11  § 17200 et seq.  But, as with the misrepresentation claim, there is

12  no substantive harm alleged outside of failure to abide by the

13  Labor Code provisions: "Defendants engaged in conduct that violated

14  California's wage and hour laws . . . ." (FAC, ¶¶ 113-116.)  Thus,

15  this claim, too, arises out of wage and hour laws and is subject to

16  the exclusion.

17  **5.   PAGA Claim.**

18      Similarly, Ingram's action as a "private attorney general"

19  under Cal. Labor Code § 2699 is specifically predicated on the

20  violations of the wage and hour laws.  (FAC, ¶ 120.)  It, too,

21  arises out of the wage and hour laws and is subject to the

22  exclusion.

23  **C.   Plaintiff's Duties**

24      Because all of the claims in the FAC either involve direct

25  allegations of violations of California's wage and hour laws or

26  arise out of such alleged violations, the exclusion from coverage

27  applies to all the claims, and Plaintiff has no duty to indemnify

28

1  Kay as to any of the claims.  Additionally, Plaintiff's liability

2  for the cost of defending the claims is limited to $100,000.

3  **IV.   CONCLUSION**

4       Plaintiff's motion for summary judgment is hereby GRANTED.

5  Defendant Ingram's motion for summary judgment is hereby DENIED.

6

7  IT IS SO ORDERED.

8

9

10  Dated: January 29, 2015

11                                        DEAN D.  PREGERSON
                                         United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28